# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pure Wafer Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>City of Prescott, et al.,<br><br>    Defendants. | No. CV-13-08236-PCT-JAT<br><br>**ORDER AND PERMANENT INJUNCTION** |

Pending before the Court is Pure Wafer, Inc.'s ("Pure Wafer's") Motion for Judgment on Remand ("Motion"). (Doc. 135). The City of Prescott (the "City") and the City's individual administrators in their official capacities filed a Response to Pure Wafer's Motion. (Doc. 139). Pure Wafer has filed a Reply, (Doc. 141), and the City has filed an Objection to Pure Wafer's Reply, (Doc. 145). The Court now rules on Pure Wafer's Motion.

**I.     BACKGROUND**

The Court previously detailed the factual and procedural background in its Findings of Fact and Conclusions of Law and Permanent Injunction ("Findings and Conclusions"). (*See* Doc. 87 at 1–13). After a bench trial, the Court found that the City violated the Contract Clause of the U.S. Constitution when it declared that its sewage treatment plant would no longer accept effluent discharged by Pure Wafer. (*See id.* at 13–29). Because the Court found in favor of Pure Wafer on its Contract Clause claims, it did not reach the merits of Pure Wafer's alternative claims for breach of contract and the

implied covenant of good faith and fair dealing resulting from the parties' obligations under a Development Agreement. (*Id.* at 29). The Court also granted Pure Wafer's request for a permanent injunction, enjoining the City from enforcing various provisions of the City's Ordinance No. 4856-1313 (the "Ordinance") against Pure Wafer. (*See id.* at 29–32). The Court finally entered a final judgment in Pure Wafer's favor. ("Judgment," Doc. 88).

The City appealed the Findings and Conclusions as well as the Judgment. (Doc. 95). The Ninth Circuit Court of Appeals (the "Ninth Circuit") affirmed-in-part and reversed-in-part and remanded for further proceedings. *Pure Wafer Inc. v. City of Prescott*, 845 F.3d 943, 959 (9th Cir. 2017). In particular, the Ninth Circuit held:

> [W]hile the City prevails on its appeal of the Contract Clause issue, judgment for Pure Wafer can be sustained on the alternative ground that the City has breached its contract with Pure Wafer. We leave it for the district court on remand to decide the appropriate remedy.

*Id.* at 958. The Ninth Circuit also affirmed the Court's judgment on the City's counterclaim. *Id.* at 958 n.14.

After reviewing the parties' Joint Status Report on Remand, the Court continued to exercise supplemental jurisdiction over Pure Wafer's breach of contract claims and deemed Pure Wafer's complaint amended to conform to the evidence presented at trial. (Doc. 134 at 1–2). The Court also ordered supplemental briefing on the appropriate remedy in light of the Ninth Circuit's opinion. (*Id.*).

## II. LEGAL STANDARD

A plaintiff must satisfy the following four-factor test before a court may grant permanent injunctive relief: (1) the plaintiff must suffer irreparable injury; (2) legal remedies, such as money damages, are inadequate; (3) an equitable remedy is warranted in light of the balance of hardships between the parties; and (4) a permanent injunction would not disserve the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "[T]he decision whether to grant or deny injunctive relief

rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity." *eBay*, 547 U.S. at 394.

III. ANALYSIS[1]

Pure Wafer argues that the Court should grant its request for a permanent injunction that (1) enjoins the City from enforcing portions of the Ordinance against Pure Wafer; and (2) orders the City to comply with specific portions of the Development Agreement. (*See* Doc. 135-1 at 28–29). The City argues that Pure Wafer's request is duplicative, and the Court should only order it to comply with specific portions of the Development Agreement. (*See* Doc. 139-1 at 2–3). Because the basis justifying Pure Wafer's remedy is different from the basis the Court relied upon in its Findings and Conclusions, the Court will re-analyze the four factors necessary to issue a permanent injunction consistent with the Ninth Circuit's mandate.

### A. Specific Performance or a Permanent Injunction

As a threshold matter, the parties disagree whether the Court should order specific performance and/or grant Pure Wafer's request for a permanent injunction. In particular, Pure Wafer argues that both remedies are appropriate, (Docs. 135 at 5–10; 141 at 2–3), while the City argues that only specific performance is an appropriate remedy, (Doc. 139 at 4). The Court disagrees with each party's contentions.

In a breach of contract case, like this one, the distinction between specific performance and injunctive relief is not as clear as the parties suggest. When a party breaches a contract, a court may, in certain circumstances, order specific performance of a contract duty or order an injunction against breach of a contract duty. Restatement

---

[1] Pure Wafer attaches to its Motion five exhibits that were not presented at trial and were not in the record on appeal. (*See* Doc. 135-1 at 1–26). The City does not move to strike these exhibits but states that the Court should not consider them. (Doc. 139 at 6–7). Besides referencing these exhibits in its Statement of Facts, (Doc. 135 at 1–4), Pure Wafer does not appear to rely on these exhibits for any part of its legal argument. Further, because the Court finds it is able to rule on Pure Wafer's Motion without consideration of these exhibits, the Court need not resolve whether consideration of these exhibits is proper. *See Sec. & Exch. Comm'n v. M & A W., Inc.*, No. C-01-3376 VRW, 2005 WL 2988963, at *7 (N.D. Cal. Oct. 31, 2005) ("Because the court does not rely on any of [the SEC's exhibits] in this decision, [the defendant's] objections [to the exhibits] are moot."), *rev'd in-part on other grounds*, 538 F.3d 1043 (9th Cir. 2008).

(Second) of Contracts § 357 (Am. Law Inst. 1981). If a court "orders a party to render the performance that [it] promised," that remedy is typically classified as specific performance. *Id.* § 357 cmt. a. If a court orders a party to *refrain* from certain conduct that would be inconsistent with the party's obligations under the contract, the remedy could be classified as either specific performance of the duty or an injunction against the prohibited conduct. *See id.* § 357 cmt. b. Further, the fact that an injunction may be mandatory or prohibitory undermines any distinction between specific performance and injunctive relief in a contract case. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009).

Perhaps recognizing the difficulty in distinguishing between specific performance and injunctions, courts often characterize requests for specific performance of contractual duties as requests for injunctive relief. *See Power P.E.O., Inc. v. Emps. Ins. of Wausau*, 38 P.3d 1224, 1228 (Ariz. Ct. App. 2002). ("Indeed, courts frequently characterize an injunction preventing a party from breaching a contract as an order of specific performance." (citing *Daley v. Earven*, 639 P.2d 372 (Ariz. Ct. App. 1981)); *see also Lansmont Corp. v. SPX Corp.*, No. 5:10-cv-05860 EJD, 2012 WL 6096674, at *5–6 (N.D. Cal. Dec. 7, 2012) (recognizing a permanent injunction as a means of ordering specific performance). Likewise here, where the parties have not cited—and the Court has not located—any authority requiring it to characterize the relief requested by Pure Wafer as specific performance, the Court treats Pure Wafer's request as one for a permanent injunction subject to *eBay*'s four-factor test.

Additionally, while the City strenuously argues against the Court granting Pure Wafer's request for a permanent injunction, its own proposed form of relief is, by definition, a permanent injunction. (*See, e.g.*, Doc. 139-1 at 3 (proposing an order "that the City shall not . . . refuse to accept [specified] wastewater into the City sewer system so long as the concentration of fluoride in that wastewater does not exceed 100 mg/L")). Thus, the Court finds that the parties' disagreement on whether the Court should order specific performance or grant Pure Wafer's request for a permanent injunction is legally

irrelevant. Instead, the parties actually disagree over whether the subject of the permanent injunction should be the Development Agreement, the Ordinance, or both.

### B. Irreparable Harm and Inadequate Remedies Available at Law

Pure Wafer argues that a permanent injunction is justified because merely ordering the City to pay damages while the City continues to breach the terms of the Development Agreement would be "contrary to the ends of justice." (Doc. 135 at 8 n.3). In particular, Pure Wafer argues that, upon signing the Development Agreement, it did not have the expectation that it would be required to pre-treat its effluent or design, construct, and operate its own fluoride treatment facilities. (*Id.*). The City does not disagree that there is irreparable harm and an inadequate remedy at law, but instead argues that the irreparable harm stemming from its breach of the Development Agreement is not proportionate to a permanent injunction against the City's enforcement of Ordinance. (Doc. 139 at 4–6). In particular, the City notes that the Ninth Circuit did not make detailed conclusions regarding the specific provisions of the Ordinance that led the City to breach the Development Agreement. (*Id.* at 6). The Court agrees.

Irreparable harm is "that for which compensatory damages are unsuitable." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (quoting *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992)). Because a breach of contract is generally compensable by money damages, a permanent injunction will rarely issue based on a breach of contract absent evidence of intangible injuries that may stem from the breach. However, irreparable harm may nonetheless be present in a breach of contract case. *See, e.g.*, *Cazorla v. Hughes*, No. CV 14-02112 MMM (CWx), 2014 WL 12235425, at *18–21 (C.D. Cal. Apr. 7, 2014); *Google, Inc. v. Jackman*, No. 5:10-cv-04264 EJD (HRL), 2011 WL 3267907, at *5 (N.D. Cal. July 28, 2011); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (noting that "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," but intangible injuries that may also arise out of a contractual breach may constitute

irreparable harm). Because the City concedes irreparable harm is present and there is an inadequate remedy at law, the Court finds Pure Wafer has satisfied these elements and will evaluate the scope and breadth of Pure Wafer's requested permanent injunction in light of these elements.

While the Court previously enjoined the City from enforcing specific provisions of the Ordinance against Pure Wafer, that ruling was based on the Court's conclusion that the Ordinance unconstitutionally impaired Pure Wafer's rights under the Development Agreement. (Doc. 87 at 29–30, 32). On appeal, the Ninth Circuit reversed the Court's decision and alternatively held that the City breached its obligations under the Development Agreement by attempting to enforce parts of the Ordinance against Pure Wafer. *Pure Wafer*, 845 F.3d at 956–57. Thus, the Court must tailor any injunction to the harms flowing from a breach of contract rather than a violation of Pure Wafer's constitutional rights. *See Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998–1002 (N.D. Cal. 2006) (recognizing that "an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law" (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004))).

Courts often tailor injunctions issued in response to breaches of contract differently than those issued in response to a defendant's violations of constitutional rights. In particular, when plaintiffs seek an injunction based on a breach of contract, courts often enjoin the defendants from further breaches of the contract. *See 7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 631–34 (E.D. Pa. 2013); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *19 (N.D. Tex. Sept. 12, 2007). In contrast, when a plaintiff seeks an injunction based on a violation of its constitutional rights, courts often enjoin the defendant from enforcing the measure that violated the plaintiff's rights. *See W. Indian Co. v. Gov't of Virgin Islands*, 844 F.2d 1007, 1014–15, 1023 (3d Cir. 1988) (affirming a district court's grant of a permanent injunction that enjoined the government from enforcing a law that violated the Contract Clause); *see also, e.g.*, *Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*,

903 F. Supp. 2d 446, 472–73 (N.D. Tex. 2012); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 878–79 (N.D. Ill. 2000); *Allen v. Minnesota*, 867 F. Supp. 853, 864–66 (D. Minn. 1994).

Based on the Ninth Circuit's holding on appeal, enjoining the City from breaching specific obligations under the Development Agreement is a more appropriate remedy than enjoining enforcement of the Ordinance against Pure Wafer. In its opinion, the Ninth Circuit defined each party's rights and obligations under the Development Agreement. For example, "the City agreed to accept" Pure Wafer's discharged effluent with a fluoride concentration of up to 100 mg/L. *Pure Wafer*, 845 F.3d at 956–57. In addition, the City agreed to accept up to 195,000 gallons of effluent from Pure Wafer per day. *Id.* at 955–57. As such, the Ninth Circuit reasoned that, on a whole, the City's enforcement of the Ordinance as to Pure Wafer would breach its obligations under the Development Agreement. *Id.* at 957. Thus, as is consistent with other cases where a plaintiff's harm flows from a breach of contract, the Court will tailor the permanent injunction to the Development Agreement and enjoin the City from violating the specific provisions of the Development Agreement discussed by the Ninth Circuit.

### C. Balance of Hardships

Pure Wafer argues that the balance of hardships favors the grant of a permanent injunction because such remedy would "only force the City to accept responsibility for the risk it accepted in the contract." (Doc. 135 at 7). Pure Wafer further specifies that the City contracted "to accept the Pure Wafer discharge even if future state or federal environmental regulations might make that acceptance more costly." (*Id.*). The Court agrees—and the City does not dispute—that the balance of hardships favors Pure Wafer. (*See also* Doc. 87 at 30).

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987); *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of

hardships a court must consider the impact granting or denying a motion for [an] injunction will have on the respective enterprises.").

Here, an injunction enjoining the City from breaching specific provisions of the Development Agreement would only proscribe the City's infringing activities while the lack of an injunction would threaten Pure Wafer's continued operation. Pure Wafer provides little elaboration as to why the balance of hardships requires both an injunction requiring the City's compliance with the Development Agreement and an injunction enjoining the City's enforcement of the Ordinance. Pure Wafer only argues that, "[g]iven the City's history of attempting to eviscerate its obligations under the Development Agreement by enacting a cost-shifting ordinance under the guise of an environmental regulation, this is an existential issue for Pure Wafer fully justifying its concern that a permanent injunction [regarding the Ordinance] remain in place." (Doc. 141 at 3). This argument not only lacks any detail but also fails to address why the balance of hardships requires two forms of an injunction. Thus, the Court is satisfied that the balance of hardships tips in favor of Pure Wafer to the extent it warrants entry of a permanent injunction enjoining the City from violating specific provisions of the Development Agreement.

### D. Public Interests at Stake

Besides Pure Wafer's general discussions about the balance of hardships, Pure Wafer does not specifically address public interests at stake. The City argues that a permanent injunction enjoining enforcement of the Ordinance against Pure Wafer "may in fact damage the public interest." (Doc. 139 at 4–6). However, the City does not present any public interest argument relating to a permanent injunction requiring the City's compliance with the Development Agreement.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "The public interest analysis for the issuance of a[n] injunction requires [the court] to consider whether there exists

some critical public interest that would be injured by the grant of [injunctive] relief." *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (quotation marks omitted), *vacated and remanded on other grounds*, *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012). With regard to the likely public interest consequences of the injunction, "[s]uch consequences must not be too remote, insubstantial, or speculative and must be supported by evidence." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

Here, the public interest would not be disserved by a permanent injunction requiring the City to comply with the Development Agreement. As the Court previously recognized, the City has no legitimate public interest in attempting to shift costs of pretreatment to Pure Wafer in violation of the Development Agreement. (Doc. 87 at 30). Further, Pure Wafer has failed to address how an injunction enjoining the City's enforcement of the Ordinance against Pure Wafer—especially in light of the Ninth Circuit's decision—is in the public interest. *See Stormans*, 586 F.3d at 1139 ("The plaintiffs bear the initial burden of showing that [issuance of an] injunction is in the public interest.").

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** vacating the permanent injunction against the City Defendants. (Doc. 87 at 29 ll. 15–26; 30; 31 ll. 1–5; 32 ll. 12–19).

**IT IS FURTHER ORDERED** granting in-part Pure Wafer's request for a permanent injunction. The City of Prescott shall not breach its obligations under the Development Agreement relating to: (1) the acceptance of all effluent—up to 195,000 gallons per day—from Pure Wafer's Prescott facility that does not exceed a 100 mg/L concentration of fluoride; (2) the imposition of any cost or expense on Pure Wafer related to fluoride limits when the effluent's fluoride concentration does not exceed 100 mg/L; and (3) the City's construction and maintenance—at the City's own expense—of all facilities as may be required in order for the City to continue to accept Pure Wafer's

1  effluent at the volume and fluoride concentration described above.

2  **IT IS FURTHER ORDERED** vacating the prior judgment in favor of Pure Wafer and against the City. (Doc. 87 at 32 ll. 3–8). The judgment is not vacated as to the City's counterclaim.

**IT IS FURTHER ORDERED**, consistent with the Ninth Circuit's mandate and this Order, the Clerk of the Court shall enter judgment in favor of Pure Wafer and against the City.

Dated this 31st day of July, 2017.

James A. Teilborg
Senior United States District Judge